This is People v. Larry Williams, No. 1-19-0418. Let me explain how we're going to proceed. I think we should go over that first. We want to try to make this as much as if we were in person as we can, and that's difficult. But what we would like to do is for us to proceed as we would in the courtroom, except that when one of us has a question, he will raise his hand. So you need to be looking for some kind of hand movement from us, and then stop your statement, you know, finish what you're saying, and then let us ask you a question and make a comment. And then maybe another judge may want to do the same. He will raise his hand, and then we'll do it like that, rather than interrupt anybody. We want to try to avoid stepping on each other. Any questions? No. Are we going to have a time? I was told that we would have 15 minutes first to speak and then questions, and then no, it's not going to be like that. Okay. Whoever told you that, we'll make sure that that doesn't happen again, because that's not correct. Okay. Okay. Rude. For the reason that we think it's more helpful, you want to know our question. That's what this means. We've read your briefs. They're very good. Good issues. So you want to hear us more than we want to hear what you have to say. So that's why we're doing it that way. So why don't you each tell us, say your name on the record since this is being recorded audio, and we'll be up on the Supreme Court website within the next 24 hours. Say your name and how much time, approximately, you wish. And we'll be liberal on the time. I'm Assistant State's Attorney Marcy Jacobs, representing the people of the state of Illinois. We're the appellant. Approximately 15 minutes and reserve five for rebuttal. And I'm Charles Piatt. I represent Larry Williams, the appellee in this case. I expect no more than 15 minutes, perhaps less. Ms. Jacobs? Thank you. In this case, the trial court unequivocally found that the officer did not deliberately lie or recklessly disregard the truth. Full stop. The trial court only found that the informant lied. But under Franks, an informant's lie does not invalidate a search warrant. So the court's ruling here, invalidating the search warrant based on the informant's lie, cannot be sustained. And even defendant does not dispute that the Franks court limited impeachment of the search warrants only to the officer affiant, specifically precluding impeachment of any non-governmental informant. And, of course, this is because the entire purpose of allowing... Yeah. We have an affiant who... One of the affiants... Can you hear me? Yes. One of the... John Doe is an affiant. Yes. The judge heard his testimony. Now, you're saying if the police officer... The basis for the search warrant is really coming not so much from the police officer, although, you know, the police officer looked at the building and looked at the photograph. I understand all that. But this is coming from the fact that John Doe had been in the building, had had several transactions with, supposedly with Mr. Williams, and knew that apartment. When I look at the cases, particularly the Supreme Court of Illinois case, I don't see that limitation to police officers. The judge here looked at it and said, look, this was an affiant. He swore that this was truthful to the judge issuing the search warrant. Why should it only apply to a police officer when you have an affiant here on which is, as you said, the whole... Really, the basis for this whole search warrant is John Doe. The entire basis of the Franks ruling was to deter official misconduct. That's the basis of the Fourth Amendment, to deter, to make violations of the Fourth Amendment by official, by the government, to deter official misconduct. That's the entire basis for it. The Franks court was 100% clear that it was only the government official affiant that was at issue there, not any non-governmental informant. You just said that issue there. All right. Our issue is different here. You said an issue there in Franks. So they wouldn't get into this issue. This is a different issue. The issue here is different with regard to a confidential source of information. And when you get into confidential sources, there's a higher recognition of confidential sources. For example, as you know, on probable cause, or if somebody calls the police and they don't know who called, we look at that a little different if we know who did call. So we have somebody who's confidential here. Somebody could come in there and just, you're saying that they could lie and lie and lie, an informant, could lie, lie, and lie, and as long as the judge, what? It's fine. It's 100% on the informant. So the informant can lie, lie, and lie. Search warrant goes out. That's fine. I'm telling you that the United States Constitution, Fourth Amendment of the United States Constitution, protects against governmental violations, not of private citizens. And under Franks, which the Illinois Supreme Court duly follows, the entire purpose of Franks, regardless whether in that particular case they knew that it didn't involve a CI, but they explicitly went through six different points of explanations of how the ruling would meet the goal of deterring official misconduct and justifying the use of the exclusionary rule, which also only serves to deter official misconduct. The defense does not dispute that Franks said this. I understand. Okay. What I'm saying is we have a different case here. We have a different case here. So that doesn't mean that Franks applies. It's not all square with Franks. Therefore, we have a different situation. So maybe it's unique. Maybe it's something that needs to be clarified so that, you know, confidential informants cannot simply go into a court and lie to a judge and say anything in order to get a search warrant on someone. And the police are just, I mean, they don't know. They've been duped, too. So the Chambers Court, so because the defendant could not dispute that Franks only allowed for official misconduct, instead, he seemed to find in the Chambers Court decision that it simply did away with that limitation, that it simply rejected the United States Supreme Court reasoning in Franks. And he based it on the Chambers Court's discussion of People v. Lucente. An appellate court case from this division, People v. Garcia, a 1982 case, when that court tried to reject another explicit limitation on the Franks ruling. And our Illinois Supreme Court explicitly stated to the extent that the appellate court suggested that Illinois law departs from or goes beyond Franks, that decision is not to be followed. Now, defendants claim that Franks departed from or went beyond Franks is entirely erroneous. Because when we look at the goal of the Franks hearings that were ordered in Chambers and in Lucente, okay, the reason that those hearings were ordered… Okay. So, I mean, again, we have a different situation here. And you're looking at round holes, and we have a square peg. So we got to figure out where this belongs. And we have to use what we have. I understand it. But we need to make sure that we have a system where people come before a neutral magistrate. And if it's material, you know, that's another issue, materiality. Okay. So what I want to say to you is that the Chambers court did not overrule Franks on this point, but for good reason. Look at the reason that the Chambers court ordered the Franks hearing in Chambers. It was not because it was trying to decide whether or not the informant lied or the officer lied. It knew the informant lied, okay, because the informant already admitted that he lied, he perjured himself in front of the magistrate. So if that was enough to invalidate the search warrant in that case, then the Chambers court would never have to have ordered the Franks hearing. The whole point of the Franks hearing was to find out if the officer lied. And that has never changed. That has never changed through Lucente when facts were a little different. And now our Illinois Supreme Court has reaffirmed in Chambers because all Chambers did, all Chambers did, was settle a dispute among the districts about whether or not a Franks hearing, if a CI appeared before a magistrate, that automatically precluded a Franks hearing. It did not. And that's all Chambers did. It did not go on to completely abolish the limit put on by Franks through the Fourth Amendment of the United States Constitution that you could exclude evidence on the basis of a non-governmental actor, X. So that's not at all what Chambers said. So right now, our Illinois Supreme Court follows Franks. Chambers did not change that. And to get to what you were talking about, additionally, we are talking about material, materiality here. We do have to look at that because what we're talking about here, Franks said that the, that the, it was only concerned with substantial violations of the Fourth Amendment, false statements that were necessary and material to the finding of probable cause. And it was not concerned with innocent mistakes. It expected those mistakes would occur. It was not even concerned with deliberate falsities that when excised from the warrant did not affect the finding of probable cause. And that was no mere afterthought in Franks. That was mentioned in the third sentence of the Franks opinion and then repeatedly throughout. So in Chambers and Lucente, the falsity was substantial. It was whether the crime even occurred. It was whether those defendants actually sold drugs to those informants. Here, what are we talking about? We're talking about a misdescription of the interior of the premises to be searched, a technical error. And cases in Illinois that have addressed these misdescriptions of the premises, the concern is whether the premises was described with enough particulars. I think the concern, I hit my hand up. I don't think you saw it. Oh, I'm sorry. I didn't. I think that the issue that the trial judge was raising, and he may not have explicitly said this, but there's doubt as to whether or not this confidential informant was ever even in the apartment, I didn't hear that. Was ever even? Was ever even in the apartment, even though he said he did drugs on the back porch, he did drugs all throughout and throughout the complex and everything. But yet he still, and he claims that he's been in the apartment more than once, but he still doesn't, he claims that he went to a bedroom to get the drugs, but yet he's mistaken about what the apartment looks like. And I think that the trial judge's concern was really whether he had ever even been into the apartment, which is why he found that he clearly lied. Now, he did go on in the motion to reconsider to make the statement about, he wasn't really saying anything bad about the police officer, but his finding clearly shows that he believes the police officer was reckless in believing this information. That's what his finding was based on. Well, I don't believe that was his finding because his finding was actually, and this is what he said, I'm not saying that the officer was lying or recklessly disregarding the truth, but John Doe certainly was. I'm quoting, he said, the problem is with John Doe, not the officer at all. I don't want any suggestion that the court is finding the officer to be incredible or even reckless. So that was not his finding. But let me say a couple of things about your, I'm going to answer your question. The type, the reason why the trial court and now defendant is arguing, it's a circular reasoning that this court has already rejected these types of negative inferences, that there's a mistake in the mirror. A technical mistake means that there must have been something nefarious going on. We have rejected that because what we have instead is what's called a substantial preliminary showing. That's what needs to happen here. That's circular reasoning. And if you're allowed to have any mistake that appears, and we're talking about the most technical of technical mistakes here. And if that sort of mistake would require a Frank's hearing, then any mistake would require a Frank's hearing, whether it was non-material to the finding of probable cause, whether it was an innocent mistake or not. And it completely curtails the substantial preliminary showing procedure. Because according to defendant, expecting him to make a statement of supporting reasons in that substantial preliminary showing, as required by Frank's, is quote, unreasonable. Because instead of trying to meet the requirements. That preliminary showing is less than preponderance, though. Correct, but? It's not difficult to reach that level. Well, it is. Because I don't want you to argue. You're arguing both issues at the same time, and there's two different issues. Okay. First of all, what it requires are supporting reasons, which none were given here. And the defendant does not claim that any were given here. He just says it was too hard for him to give any. He shouldn't have been expected to have to give any. So the Supreme Court didn't agree. The Supreme Court and Frank's squarely placed the burden on defendants to make that showing. And the showing must be substantial if he's going to make accusations against an officer. And if such a showing was actually so insurmountable and unfair and unreasonable, there would be no Frank's hearing. And that's not the case. They're not supposed to be routine either. And the United States Supreme Court in our Supreme Court says that that's the linchpin of Frank's. I want you to make no mistake. He did not give any supporting reasons here, much less substantial ones. He only made a bare-bones allegation and then wants to take that leap, that circular reasoning, that because there was an actual mistake found, that that means that the officer must have deliberately lied or recklessly disregarded the truth. Or he's doing what's absolutely banned by Frank's, is he's using it as a discovery deposition where he literally admits, and I'm quoting, there's no conceivable way for a court to determine that a lie was intentionally or recklessly made without holding a hearing where such inquiries may be made of the affiant. That's what he wanted to do, cross-examine the affiant. That's what Frank's explicitly prohibits. That's not why you get a Frank's hearing. You have to come in with some reasons. You have to come in with some supporting reasons. He came in with none. And... He didn't come in with none. He came in with none. Oh, he did not come in with none. Now, you call it, you know, an error. They call it something material with regard to the two bedrooms rather than one, which was stated several times by the affiant, by the police officer, that it was two bedrooms, okay? There's no question about it. So you, you know, you talk about it and try to put a ribbon around it in one way. The defendant do it another way. Okay. You have a dispute on that. But really the question, again, to me, goes down to the question of materiality of that statements that were in the affidavit, in the complaint, and that were testified to apparently before the search warrant was issued. Well, let me say this. First of all, there was a discrepancy. There was a falsity. You're right. I'm not disputing that. But that's not the showing that is required under Franks. The showing is not that there was a discrepancy. Franks understands there will be mistakes. That's not the showing. The showing is that it was material and that the officer intentionally lied about it or recklessly disregarded it. That showing was not made. The showing that there was a mistake was made, but that's not the showing that's important here. That's not the showing that Franks requires here. So getting back to whether it was material, let me say, so the courts that address the issues of descriptions, misdescriptions in the place that's to be searched, those courts don't even address it in terms of Franks. They don't address the issue in terms of whether or not the officer lied or recklessly disregarded the truth about the description of the premises to be searched, which would be revealed the moment the search was executed anyway. It's such an obvious, objective, easily provable fact. The courts address it in terms of whether it was particular enough, whether there was confusion of did they find the right apartment. Here they found the right apartment. No one disputes that. In fact, the misdescription in this case didn't have anything to do with even getting to the right apartment because it had to do with how the apartment looked inside. And therefore, the number of bedrooms was not only not a material fact in the finding of probable cause, it was also superfluous to the identification of the premises to be searched. You didn't even need it in there because the outside was described correctly, and that's why they found the apartment. So this case is not just about an officer deliberately lying. I'm sorry, this case is just not about an officer deliberately lying or even recklessly disregarding the truth about the layout of the interior of this apartment that would have been revealed the moment he walked into it. This particular falsity, if you want to call it that, it's not even a Frank's issue. It's outside the ambit of Frank's. The issue when it comes to descriptions of apartment, every case in Illinois is about whether they got to the right place or not. And that's why the defendant does not dispute that. He does not dispute that the premises were not described with enough particularity. And that's why he does try to turn Frank's upside down by suggesting that an innocent mistake in the description raises the issue of whether the CI was honest about the drug transaction at all. But as I stated, this is circular reasoning. It's been rejected by courts in Illinois, People v. Martin, People v. Garcia, 2017. And like I said, if it were otherwise, any falsity, any falsity would get a Frank's hearing to be able to cross-examine, which is exactly the wrong reason to get a Frank's hearing, to find out if the officer lied. And common sense, which is what this is all about here, tells you that the officer was not about to lie or even intentionally or recklessly disregard the number of bedrooms in a place. He clearly had no way of knowing how many were in there. He wouldn't have done that. It would have jeopardized his whole operation because it was revealed the moment we got in. And I'm here to say that I also believe that the trial court, his finding that the informant lied, lied instead of was mistaken, was manifestly erroneous. Because the facts in this case were that even the informant didn't get very far into the apartment. He was in the living room. That's not clear. That's not clear. The questioning was not very clear. Well, what was stated in the search warrant is that he was in the living room. Okay? And that's all that we know. And that's interesting that you bring that up because, you know, this is the defendant's burden here. Defendant lived in this apartment. He could have provided some information about the layout of the apartment that it would have been impossible for the John Doe that if he was in the living room, he would have seen both bedrooms. But he didn't do that. It was his burden to do that. But, nonetheless, that is not even what's at issue here. The issue is still under Illinois law that follows constitutional law and Fourth Amendment search issues is that it is the affiant officer only that's at issue. And because of that, we ask this court to reverse not only the trial court on making that deliberate, explicit finding that this officer was not reckless or had an intentional lie, that the search warrant could not, under existing law, could not have been invalidated on that basis. But also we want this court to find that he should never have granted the Franks hearing in the first place because defendant did not make a substantial preliminary showing. Everything he said was merely conclusory. And he just sought to have a discovery by cross-examining to get the reasons that he wasn't able to get. And any kind of inference with the circular reasoning is not permitted in Illinois. So we're asking for reversal. Thank you. Are you ready for me? There are a number of points that I wish to address. First of all, the Fourth Amendment isn't designed to limit an attack on a search warrant to the credibility of an officer who gets information from an informant. It's designed to protect from unreasonable searches and seizures. And one of the aspects of that is that probable cause for warrant must be based on fact. So the first issue really to address is the last one raised by the court, and that is whether or not this is a material fact. It's my position that when an informant or any witness under any circumstances in any hearing is shown to be less than credible, then it raises a question as to whether not only that portion of his testimony is incorrect, but whether the entire testimony would be incorrect. In this particular case, other than what's in the written complaint for the warrant, we don't know what the informant may or may not have been asked or what responses he may have been required to give, if any. I mean, we don't know if Judge Chavez, when she signed the search warrant, said, is this your signature and did you read this, or if she asked specific questions. So we're limited to what's in the complaint itself. And the complaint for the warrant says in three different places that the apartment was a one-bedroom apartment. The officer in his police report, which is part of the common law record, part of the court file, says that it was a two-bedroom apartment. We don't need a written affidavit. We need to make a substantial showing as to that fact. And how we do it can be in the form of either an affidavit. It could be in the form of any credible document. Any ‑‑ yes. Yes. I want to know how is it material? Ms. Jacobs just said the case is in Illinois. Did you get the place right? That's what's important. It's not so important that it have two bedrooms, one bedroom, a kitchen, a porch. That's not so important. What's important is they got the right address. I'd like you to address that. That, to me, goes to the gist of this case. Okay. That is really a separate issue from a Frank's issue. The cases that I've read that the state cites in its argument are cases where there was a question as to whether the police went to the right place. Okay, whether they went to the premises that were described in the warrant, whether the warrant gave an adequate description of where the premises were. Not what was inside them necessarily, not how they looked. In this particular case, what I think distinguishes it from the state's cases and the argument the state makes is that, number one, you have the informant himself appearing before the magistrate, signing the complaint for the warrant, presumably swearing to it in front of the magistrate, and him saying it's a one‑bedroom apartment repeatedly. It is not a one‑bedroom apartment. And the issue goes not to whether or not they went to the right location, but whether or not anything in that location was ‑‑ or search of anything for anything in that location was supported by probable cause based on what the affiant claimed. It's not just, well, the building on the corner, I think the address is 2200, and it turns out to be 2202, but there's an adequate description of the building. That's not the issue. The issue is, okay, we go to that address, it's that building, we go inside, and we find absolutely nothing that matches up with what the informant told us. Not in terms of what we were going to find as far as contraband or evidence, but as far as a description of the premises from the inside. If he had described it, it's 2100, it's on this corner, there are no other buildings on the block, it's a red brick building, and you go there and you find a white frame building, then obviously it's not the right place. But once you're inside the description, it becomes important, because it goes to whether or not the informant, as your Honor indicated earlier, whether the informant was ever inside the property, and whether or not anything that he claims in the complaint is credible. So when you have the issue of credibility, you have to question the warrant. And that's something that can't just be addressed by looking at the complaint and looking at the police report, for instance, saying, well, he said it was one bedroom, it's two bedrooms, did he lie, was he mistaken? It may have been an honest mistake. It may have been a lie. The defendant has no way to prove that. Justice Pierce. Oh, I'm sorry. When John Doe or confidential informant appears in front of the magistrate and says, I was at this location and I brought some narcotics from the defendant, I've done it a couple of times. I've used narcotics in the apartment. Is it critical to the issue of probable cause of whether that apartment had one or two bedrooms? It wouldn't matter as the property. My guess is, my guess, my knowledge is the search warrant was not issued based upon it was a one bedroom apartment. The search warrant was issued upon whether the magistrate was persuaded that the informant or John Doe brought drugs at that location and the location was specified. Once the search warrant issues, the police officers can walk into that apartment and search any aspect of that apartment, whether it's one bedroom, five bedrooms, the basement, whatever.  Correct. Okay, so whether it was one bedroom or two bedrooms was not material to determine whether there was probable cause to believe that drugs were present in the apartment, wherever they'd be located. And that's where the difficulty comes in on a Frank's hearing. They're not saying any error, any mistake. They're saying a mistake that is critical to the question of probable cause to issue the warrant in the first place. I really fail to see how a confidential informant or John Doe says it was a one bedroom apartment. And the defendant says, no, it was two bedrooms throughout the warrant. I don't get it. Okay, well, here's my position. No, it wouldn't matter if it was a 10 bedroom apartment or a studio or whatever. I understand that. The problem isn't with what, in fact, the apartment was. The problem is the information given to the magistrate and whether there is a reason to believe for the magistrate to believe that that information is correct. Is that information or just a description of the one or two bedrooms? Well, but that goes to whether or not the affiant was ever in the apartment. He's describing it. For instance, if he said, I went into this apartment and there was a fat man who was five feet tall who handed me the drugs and they police go into the apartment and they find there was never such a person or that the only people that live there are women or something else. It has it has to do with whether the information given to get the warrant was was properly given. And the difference between this case and Frank's and some of the other cases that the state sites is that in this case, the informant him or herself went before the magistrate and said, I was there. This is what I saw. This is what I did. This is what it is. And it turns out it isn't. It didn't take place in a one bedroom apartment. It took place in a two bedroom apartment. The sale of narcotics is what is the issue of whether probable cause exists to determine whether there will be drugs there on the execution of the search warrant. Not whether it's a two bedroom apartment. You're right, except that if if an informant tells a police officer, I got drugs in that apartment, that's not enough, especially when it turns out that there are other facts that dispute what the defendant or what the informant describes is the apartment looking like. Let me interrupt you and ask you this. This informant said or John Doe said I bought drugs in this apartment a couple of times and I use the drugs in the apartment. If your defendant submitted an affidavit and said he never consumed drugs in my apartment, would that be enough for a Frank's hearing? Apparently not. According to the case of the state sites. But according to chambers, it would be. Because if I can find the language here, one of the things that they discuss when they distinguish Lucente is that it is that in Lucente, the state's position was that the defendants showing was insufficient because it did not negate the possibility that it was the informant rather than the officer who was the source of the false statement. This court, meaning the Supreme Court, noted that if that if this were the requirement, an alibi, no matter how strong, would never be sufficient to justify a Frank's hearing because the source of the falsehood in the warrant complaint could not be determined without a Frank's hearing. It's a circular argument to say, well, you know, it was the informant who gave false false information. And we're not disputing that what he said was false, whether it was intentional, reckless, careless. I'm sorry, bedroom or a two bedroom apartment. Is that material the issue of whether probable cause exists to believe that drugs will be in that apartment upon the execution of a search warrant? Yes, because the probable cause has to be based on facts that are credible. And if it's if it's shown and this is what Frank's talks about, too, if it shows if you can show that it's the result of a lie or false information, recklessly false information, then you're entitled to a hearing. That's the problem. The problem is that when you make the allegation that here is a statement that was given to cause a judge to issue a warrant and the statement contains incorrect or intentionally false or whatever it is. I didn't correct. Not incorrect. It's got to be intentionally misleading or false versus two bedrooms. It is not material issue of whether drugs were sold in the apartment. Yes. Well, I disagree with it because my feeling is that it's material to the issue of the credibility of the person providing the information that causes a judge to issue the warrant in the first place. If he gives false information, if he gives incorrect, inadequate, inadequate, unsubstantiated, you know, you can't just you can't just issue a warrant because somebody says so. There's got to be something to support the believability in many warrants. You know, you said I've worked with this guy before. He's provided me with information on 10 cases leading to eight arrests and six convictions and so on. We don't have that here. We don't have the anything to show the credibility, nor does even, you know, on other grounds, this is not an issue that was raised. But on other grounds, whether or not there was probable cause to believe that there were drugs in the apartment, since the informant says I smoked, I used drugs there, but I never saw them there because he says it. I'm sorry. You did not raise that as a grounds to suppress the evidence. No, I understand that we never got to that because of Judge Grant and Frank's motion. We did file two motions to suppress. But the issue and the Chambers Court talks about that as well. It would be Here, talking about Frank's that a rule which would shield police misconduct is such as conspiring with an informant or coercing an informant to making a false statement, an affidavit or testimony to the court. Such a rule would undermine the purpose of Frank's. In Frank's, the court noted that the warrant requirement of the Fourth Amendment is predicated on the assumption that there will be a truthful showing to the issuing court from which it can determine whether probable cause exists. The truthfulness is what I'm talking about. It becomes material. Counselor, I think that just coming back to Justice Pierce's question. If someone comes to the police and says that I bought drugs in this apartment a couple of times, a few times, and they're selling drugs. Well, a reasonable question from the officer would be, well, describe the apartment to make sure that there's some truth to this statement about drugs having been sold. And then the person describes the apartment and the apartment doesn't look like what the person said it looked like. Or if the officer never even asked any questions, that may be considered relying on some information in a reckless manner if you don't ask any questions. And if we're not clear in this case whether or not that happened, because I noticed that the trial judge, I don't know if you were the one trying the case, but I think the attorney was cut off a little bit towards the end there. In terms of being able to make some of those statements. But again, that's the distinction I think you're trying to make to Justice Pierce is that it's one thing to say that I bought drugs there and I bought drugs there three or four times. But then to give no other information other than I bought drugs there, I could just be leading them into my neighbor's home because I want to see him get raided. Right? I mean, that's probably the problem there if there's not more questions. And that's where the recklessness comes in. There's got to be more questions than someone just coming in saying I bought drugs there, especially when he's trying to get out of his own trouble. This was a guy who had just been recently arrested, who was now trying to get rid of his case. So he was giving someone else up. That's the case here. And in this particular case, as I recall, and I don't have the warrant in front of me right now, but I believe the officer drove past the building and the informant said, yeah, that's the building. But there was nothing more that was done by the officer to corroborate any of the information. He didn't look to see whether the defendant's name was on the doorbell. He didn't check any records to see if it was a utility company or with a landlord or anything like that to substantiate anything else told to him by the informant. So he had minimal corroboration and the one... And those were actually some of the concerns that Judge Lynn expressed in this case. Those were some of the concerns that he raised. And again, going to some of the things that the state said, there is nothing in Franks that I see, and certainly nothing in Chambers, that limits the lie to be one given by a police officer. In Franks, they talk about the affiant. In Chambers, they talk about whether or not the affiant appears and gives false information. So as to whether or not it's the police officer himself who's lying or the affiant who's lying depends on who was in front of the judge. I think that's how I take Chambers to interpret the issue. That if the affiant is the informant who appears in front of the judge and he lies, then that is, as the court says, it is something that can only be shown by... When that lie becomes apparent after the fact, after the assurance of the warrant, that can only be shown by a hearing. And in this case, the informant did appear before the judge. If the informant appears before the judge... It wasn't an if. In this case, the informant did appear before the judge. Absolutely. There's no if there. He did. Okay, he did. So where the informant appears before the judge and gives a false statement, to say that only a police officer's lie or reckless disregard of a false statement would be relevant, it kind of goes against the Fourth Amendment, where it would prevent you from attacking a warrant because it was issued on false information. It's got to be issued on information that's credible, that's true, or it shouldn't be issued at all. Unfortunately, we don't know what was asked of the informant. Yes. Mr. Pyatt, Franks specifically said, it's not any false statement. It says, the allegedly false statement is necessary to the finding of probable cause. If the John Doe or the informant told the magistrate that I was wearing a tuxedo at the time I bought the drugs, and the defendant filed an affidavit and said, this guy never had a tuxedo in his life. And it's found out that, true, I never had a tuxedo. I lied about the tuxedo. That wasn't necessary for the issuance of the search warrant. It was the purchase of the narcotics. That's what's material. And in this case, all you have for the Franks hearing was the fact that the defendant said, it's a two-bedroom, not a one-bedroom. Well, first of all, it wasn't the defendant. Not only the defendant who said it, it was the police officer. And the police officer's statement is in the court file. It's part of the court file. What difference does it make for the issuance of the search warrant? The difference it makes, Your Honor, seems to be focusing on whether or not the transaction took place. But whether or not you can believe what the person said in saying that a transaction took place also rests on the credibility of the person making the statement. If he lies about other things, you can't trust his statement. It's got to be a reliable statement. It's got to be, you know, it's got to be more than something, you know, as was said, that just, you know, somebody pulls out of hand and says, oh, yeah, that's a house and the guy on the second floor sold me drugs. That's not enough. Not when there's detail and the detail is wrong. Do you have any case law that supports the notion that a warrant that issues for an apartment that references it being a one bedroom apartment and it turns out to be a multi bedroom apartment is sufficient to quash a warrant? As far as I found, there were no, no cases that I found that dealt with the same facts as here, specifically as to the description of the number of bedrooms. And in the hundreds of years of warrant, search warrant law, if that was a factor, my guess is one case would have popped up somewhere. There's not a case out there going either way in this. There's not a case that decides it the other way either. One bedroom versus two bedrooms has nothing to do with whether there's probable cause to believe that there'll be narcotics in that apartment. I have to say that not since the equinox finale have I found a case that says that. Prior to that, there may have been and I didn't research that because Frank's was a newer decision from the US Supreme Court. But it used to be that lies contained in a search warrant could negate the search warrant. You know, it wasn't as complicated. It wasn't as difficult or nearly impossible in some cases for a defendant to say, that's not true. That didn't happen. Not the way, not the way he says, not the way he describes. It used to be the law, but now the Supreme Court through Frank said through some of the earlier decisions in Illinois seems to say that it's only if an officer lies and it's only about the officer. But it's not only about the officer. The Fourth Amendment protects the individual from unreasonable searches, whether the information stems from the officer himself or from the informant or from any other source. It has to be reasonable, which means it has to be based on fact or factual allegations that are credible. If they're not credible because some of the details that were volunteered or intentionally given by the informant are false, then we can't believe what the informant says. When he says repeatedly it was a one-bedroom apartment and it wasn't, you have to question whether anything he said was true. And the only way to do that is with a hearing. Are there any other questions? No. Thank you very much. Ms. Jacob? Yes. So first, to address Justice Pierce's concerns about when a portion of the search warrant contains something that factual, it does not invalidate the whole search warrant unless it goes to the finding of probable cause. Let me say that our Illinois Supreme Court has already overruled an appellate court case that tried to do that exact thing, that tried to say, yeah, you know what, we don't care if it went to the materiality, it was a lie. That was People v. Garcia, the 1992 case that People v. Licente overruled and said, no, you got to follow Frank's materiality. It absolutely is key, as I stated, the third sentence of the Frank's opinion. So this is not some small fact that we can just overlook. And our Illinois Supreme Court already overruled an appellate case that tried to get around that. So it didn't work once. It shouldn't work here again. And let me say that when counsel keeps talking about that the Fourth Amendment protects against unreasonable searches and seizures, yes, unreasonable from government action. And what the Frank's court defined as unreasonable is when the government actor does something intentionally or recklessly disregards something. That's what the definition of unreasonable now is in the United States Supreme Court and in Illinois. I want to talk about a couple other cases. There is one case, People v. Economy, I cited in my brief, where the defendant, where inside the house there was a law office, which was searched but not described in the search warrant. And again, these cases about misdescriptions didn't even involve Frank's issues. They just involved whether or not they could search the right place. And they were allowed to do that search, even though the person who went in the house never mentioned that there was a law office there. And then there's, in fact, every single case in Illinois that the people came across that involved misdescriptions on like the interior of the house, that it looked like a single family home on the outside, but it was really broken up into two apartments on the inside. All of those cases, none of the search warrants were invalidated. None of that. Because they looked like what they were supposed to look like on the outside. It was the right place they searched. This was not a material reason to invalidate the search warrant. This was not a reason that they didn't even get there because all they were concerned with was did they search the right place. And again, what I'm trying to say is that counsel's trying to make this a Frank's issue when it's not. It's not a Frank's issue. It's a particularity issue. Did they find the right place? And plenty of things matched up. And let me also correct counsel when he said that the officer in this case didn't do a lot of investigation. He did. He didn't just go past the place and the informant said, yeah, that's it. He noted the description. He put a very detailed description of the exterior. He also did find he did his research. He did find that the defendant used that same address, that same apartment on a previous arrest. He confirmed that. So he did do other things to corroborate. And I just need to say that, look, the exclusionary rule in this case, and that's what we're talking about, only only applies for deterring governmental conduct and nobody else's conduct. Now, that's not to say that I don't take Justice Walker's concerns, that I don't understand that if a if your neighbor wants to lie on you and say he saw the inside of your house and you did this. Of course. But there's other remedies. I mean, they certainly that informant could be subject to perjury. Certainly that informant could be subject to a civil suit. All I'm saying and all I'm saying that the United States Supreme Court said and our Supreme Court said is that those the remedy of the exclusionary rule only goes for governmental violations. And which is defined in as intentional or reckless, which this judgment absolutely confirmed. He did not find either of those. So there's literally no basis for him to have granted the Franks motion in the first place, because the circular reasoning that just because there is a mistake. Again, Franks expected mistakes it know it knew that they were garnered hastily that search warrants are garnered hastily and that there would be mistakes. So mistakes alone, whether it's the informants mistake. And in this case, again, the I'm not conceding that this was an intentional lie on the part of the informant. I think that the facts of the case, the search warrant showed that the informant only went into the living room. And so that it was an honest he only saw the defendant go into one bedroom. He didn't know if there was another one bedroom that you another bedroom. You couldn't see from where he was located. So, and I'm an honest mistake on any account does not invalidate a search warrant, but much less one by an informant and not the governmental after so Based on The Franks court absolutely distinguished between Athens. It was the government that the officer at hand. It was concerned with it point like said it was not concerned with not any non governmental informant, the chambers court reaffirmed that exact Finding and this court reaffirmed it to in the 2017 Garcia case. So there's no basis whatsoever. In Illinois in the United States to say that Frank's applies to a non governmental informant. It doesn't. But more importantly, it doesn't apply to a non material fact in the in the search warrant. The Supreme Court already knocked that down and said, Nope, it does. You will get overruled if that's what an overruled that case. So we're We're asking that you reverse the trial courts findings on both caps. No should not have granted a Frank's hearing in the first place and should not have invalidated the warrant. Thank you very much. I want to thank both console for excellent presentations on video and virtually and for your briefs. Give us a lot to think about and answer questions very well. So we're going to take this case under advisement. We will then be adjourned.